[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
The original defendants, Zacharias Kondos and Costas Papaliolios, have moved to dismiss the complaint on the grounds of forum non conveniens. The plaintiff has objected. Since this motion was filed, the matter has been settled as to Zacharias Kondos and the action has been withdrawn as to him. This court will continue to use the term "defendants, in addressing the issues since much of the defendants' motion relies on affidavits filed by Mr. Kondos.
This is a civil conversion action involving a claim by the plaintiff, Stamatis Gregos, that the defendants wrongfully took certain stock certificates of Gregofam Empresas Commerciales, S.A. which he owned.
The affidavits and other documents filed by each of the parties in support of their position with regards to the motion to dismiss on the claim that Connecticut is an inconvenient form differ widely in their allegations of facts and inferences.
 I.
The defendants claim than the issues involved in this action should be litigated in Greece where all the necessary parties, witnesses and records are located. Connecticut is an inconvenient forum to litigate the issues presented by the plaintiff who is a Greek resident, and therefore the action should be dismissed pursuant to the doctrine of forum non conveniens.
It is the further claim of the defendants that this action involves an attempt by the plaintiff Stamatis Gregos to have a Connecticut court exercise personal jurisdiction over the CT Page 11433 defendants and to have Connecticut be the forum to hear this action. The plaintiff Stamatis Gregos is a resident and domiciliary of the Republic of Greece.
The defendants claim they are Greek nationals, presently living in Greece, who were appointed as attorneys in fact to act jointly on behalf of Gregofam Empresas Commerciales, S.A., a Panamanian corporation with offices at Leof G. Gregou No. 18, Porto Rafti, Attica, Greece. This authority was granted to the defendants on March 22, 1990 pursuant to resolutions of the Board of Directors of Gregofam executed in Piraeus, Greece. At the direction of Mathilde Gregos, then the owner of all the common stock of gregofam, the defendants, acting as legal custodians of the stick certificates, delivered the stock certificates to the Royal Bank of Canada, Montreal, Canada, for safekeeping.
On February 9, 1991, Mathilde Gregos died, leaving her son, George Gregos-Mourginakis, and her daughter, Arietta Eftychios Mourginakis, as her sole surviving heirs. At the date of her death, Mathilde Gregos was a resident and domiciliary of Greece. Both of her heirs reside in Greece. In addition, her son, George Gregos-Mourginakis, operates his business Seatrade Compania Maritima, S.A. in Piraeus, Greece.
The defendants position is that the plaintiff Gregos claims that he is the sole owner of all the shares of Gregofam Empresas Commerciales, S.A., based upon a purported letter assignment dated February 16, 1991 from George Gregos-Mourginakis. George Gregos-Mourginakis alleged ownership of the shares is based upon an alleged handwritten letter dated September 16, 1978, found in the house at Porto Rafti, Greece from his mother Mathilde Gregos, who was the undisputed owner of all the shares of stock at the time of her death, expressing her intent to transfer all of the shares in Gregofam to him upon her death.
However, according to affidavits and documents filed by the defendants, George Gregos-Mourginakis and Arietta Eftychios Mourginakis jointly petitioned the City Court of Athens and on September 23, 1991 the City Court of Athens ordered an inheritance document be provided, verifying that they are the sole heirs and granting each one half of the estate of Mathilde Gregos. Under Greek law the assets of the estate of Mathilde Gregos passed equally to the heirs. Thus, George Gregos-Mourginakis had no authority to assign the shares of Gregofam rightfully owned by his sister to the plaintiff Gregos. CT Page 11434
The defendants assert that on or about March 27, 1992, the defendant and Kondos, acting upon their authority as attorneys in fact of Gregofam Empresas Commerciales, S.A. and as custodians of the stock certificates, delivered the stock certificates to Greece and subjected themselves to the Greek courts. In connection therewith, the defendant has instituted legal proceedings in the City Court of Athens seeking a determination under Greek law as to the legal ownership of the shares of Gregofam. The first action is brought by Gregofam and the defendants against Gregos. The second action is brought by the defendants against Gregos, George Gregos-Mourginakis and Arietta Eftychios Mourginakis. They claim the City Court of Athens has assumed jurisdiction over these proceedings which are presently pending.
The Plaintiff argues that this is a straightforward civil conversion case involving the wrongful taking of certain stock certificates of Gregofam Empresas Commerciales, S.A[.] owned by Mr. Stamatis Gregos. The plaintiff suggests that in their efforts to thwart the return of the stock certificates to himself, the defendants, rather than defend this lawsuit on the merits, commenced a lawsuit in Greece. Presently, these defendants, upon information and belief, are either vacationing in Greece or have temporarily relocated to Greece mainly for the purpose of suing Stamatis Gregos in Greece. Having done this, the defendants have retained counsel in Connecticut to move to dismiss the plaintiffs complaint on forum non conveniens grounds.
 II.
The plaintiff claims that the affidavits and other documents filed on his behalf as to the present motion show the defendants incorrectly state the facts with regard to Mr. Stamatis Gregos's residency. He is a citizen and resident of Canada and the Republic of Greece, who has worked in New York for several years. Moreover, Mr. Stamatis Gregos has significant contacts in the United states [States] and specifically in Connecticut.
The defendants are residents of Connecticut. The defendant Zacharias Kondos resides at 17 Harbor Road, Darien, Connecticut. Defendant Costas Papaliolios resides at 21 Ferris Drive, Old greenwich [Greenwich], Connecticut.
Furthermore, all contact between the plaintiff and the CT Page 11435 defendants which gave rise to plaintiff's lawsuit against the defendants arose out of their employment relationship in Connecticut.
It is the plaintiff's claim that contrary to defendant's conclusory statements, Greece has only limited contacts with this case. Gregofam is a Panamanian corporation. All of its corporate records were kept and are still in the custody of its lawyers in New York City. The shares in question were kept in New York City until their owner, Mrs. Mathilde Gregos, instructed her agents to place them in a safety deposit box in Canada. This occurred in 1990. At that time, the company was dormant with its shipowning holdings having lost their value during the shipping depression of the 1980s. The assignment of the shares in Gregofam was executed by George Gregos-Mourginakis, an American citizen and long-time resident of Greenwich, Connecticut.
At all material times, Costas Papaliolios and Zacharias Kondos were employed by a company known as Oceania Maritime Agency, Inc., of which George Gregos-Mourginakis was and is the chief executive officer. In the past, Gregofam's interests were represented by Seatrade. Seatrade in turn employed Stamford based Oceania as its sub-agent for its American business activities. While Costas Papaliolios and Zacharias Kondos were employed in by Oceania Stamford, Gregofam gave written instruction to the Royal bank of Canada in Montreal, Canada, to allow them access to the safe-deposit box located in Montreal. This was done as a convenience, in the event that Mathilde Gregos, the sole stockholder and president of Gregofam, was unable to go to Canada herself.
On or about March 27, 992 [1992], Costas Papaliolios and Zacharias Kondos presented themselves at the Bank and gained access to the safe-deposit box and took possession of all the shares of Gregofam. they [They] have admitted that they removed the certificates to Greece, allegedly for "safekeeping."
The only affidavit filed by any attorney familiar with Greek inheritance proceedings, the affidavit of Zafris Hatzidimitriou, states that the Court process in Greece had been limited to the disposition of Mathilde Gregos' real property holdings in Greece, because under Greek law, certain taxes had to be paid before her properties could pass to her heirs. He also seated that the handwritten letter of Mathilde Gregos dated September 16, 1978, under the terms of which the ownership of the shares in Gregofam CT Page 11436 was to pass to George Gregos-Mourginakis contains the essential elements of a valid Greek handwritten will. He also stated that under Greek law there is no impediment for a person disposing of certain assets such as stock certificates by will, while allowing the balance of one's assets to pass by intestacy. He stated that under Greek law, a will can be probated at any time after the testator's death. This same authority also stated that it is most likely that action in the pending cases in Greece would be stayed until this present matter is resolved.
 III. "The guidelines seated in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed.2d 1055
(1947), and restated in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257-62, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), provide a useful frame of reference for the resolution of this question. It bears emphasis, however, that these guidelines begin with the proposition that the trial court's exercise of its discretion may be reversed only upon a showing of clear abuse." Union Carbide Corporation v. Aetna Casualty Surety Co., 212 Conn. 311, 319 (1989).
The private factors include (a) access to witnesses, considering the availability of compulsory process and cost and (b) access to sources of proof sources of proof and documentary evidence. The public interest factors administrative difficulties, the interest of the local forum in the action and the applicable principles of the conflict of laws.
 Emphasis on the trial court's discretion does not, however, overshadow the central principle of the forum non conveniens doctrine that "unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed." (Emphasis added.) Gulf Oil Corporation v. Gilbert, supra, 508; Manu International S.A. v. Avon Products, Inc., 641 F.2d 62, 65 (2d Cir. 1981). Although it would be inappropriate to invoke "rigid rule to govern discretion"; Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); it bears emphasis that invocation of the doctrine of forum non conveniens is a `drastic remedy'"; Hemmelgarn v. Boeing Co., 106 Cal.App.3d 576, 580, 165 Cal.Rptr. 190 (1980); which the trial court must approach with caution and restraint. The trial court does "not have unchecked discretion to CT Page 11437 dismiss cases from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." Pain v. United Technologies Corporation, 637 F.2d 775, 783 (D.C. Cir. 1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). Although a trial court "applying the doctrine of forum non conveniens must walk a delicate line to avoid implicitly sanctioning forum-shopping by either litigant at the expense of the other"; id., 784 it cannot exercise its discretion in order to level the playing field between the parties. The plaintiff's choice of forum, which may well have been chosen precisely because it provides the plaintiff with certain procedural or substantive advantages, "`should be respected unless equity weighs strongly in favor of the defendant.'" Corrigan v. Bjork Shiley Corporation, 182 Cal.App.3d 166, 176, 227 Cal.Rptr. 247 (1986); see Manu International S.A. v. Avon Products, Inc., supra, 65.
 "[T]he overriding inquiry in a forum non conveniens motion is not whether some other forum might be good one, or even a better one than the plaintiff's chosen forum. The question to be answered is whether [the plaintiff's chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved." Carlenstolpe v. Merck Co., 638 F. Sup. 901, 909
(S.D.N.Y. 1986), appeal dismissed, 819 F.2d 33 (2d Cir. 1987). Accordingly, the trial court, in exercising its structured discretion, should place its thumb firmly on the plaintiff's side of the scale, as a representation of the strong presumption in favor of the plaintiffs chosen forum, before attempting to balance the private and public interest factors relevant to a forum non conveniens motion. Picketts v. International Playtex, Inc., 215 Conn. 490, 500-502 (1990).
The defendants claim that the principals in this action are either Greek nationals or reside in Greece; the decedent Mathilde Gregos resided and was domiciled in Greece at the time of her death and the rights of the beneficiaries and heirs of her estate are governed by Greek law; the acts of the defendants as attorneys in fact should be construed under Greek law as Greece was the situs of the grantors of that authority Mathilde Gregos and Gregofam Empresas Commerciales, S.A.; and, the validity of the assignment of stock should be interpreted under Greek law.
The principal claim of the defendants, besides the issue of CT Page 11438 applicable law, is that there are numerous witnesses who reside in Greece, including the parties to this action and relatives of the decedent Mathilde Gregos, who have knowledge and are available to testify in Greece about the events which occurred subsequent to the purported September 16, 1978 letter upon which the plaintiff is predicating his claim to all the shares of stock of Gregofam. The primary language of the parties and witnesses is Greek, not English and the documents necessary to the case are in Greek and would have to be translated for use in the Connecticut court.
The defendants in this case have not submitted the specific names of the witnesses they intend to call or the descriptions of their proposed testimony. They claim this is not necessary. They claim the movants need only provide enough information to enable the court to balance the parties' interests. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 258, 102 S.Ct. 252,70 L.Ed.2d 419 (1981).
The court, however must agree with the plaintiff that the applicable rule in this issue is that enunciated in Picketts v. International Playtex, Inc. 215 Conn. 490, 576 A.2d 518 (1990).
 When a dismissal is premised on the convenience of witnesses, more than a mere allegation to that effect is required. Piper Aircraft Co. v. Reyno, supra, 259 and n. 27. "Rather, the defendant[s] must establish, with specificity, inconvenience to witnesses that is sufficiently prejudicial to justify dismissal." Mowrey v. Johnson Johnson, 524 F. Sup. 771, 775 (W.D. Pa. 1981). A party seeking to transfer a case . . . for the convenience of witnesses must identify the key witnesses to be called and must make a general statement of what their testimony will cover. Jenkin v. Wilson Freight Forwarding Co., 104 F. Sup. 422, 424
(S.D.N.Y. 1952). The burden is upon it to give the names and locations of potential witnesses and the substance of their testimony. Rational Super Spuds v. New York Mercantile Exchange, 425 F. Sup. 665, 668 (S.D.N.Y. 1977). Sufficient information must be included in the affidavits to establish that the named witnesses are key witnesses who need to be called and that their testimony is material." Alcoa Steamship Co. v. M/V Nordic Regent, 654 F.2d 147, 167
(Van Graafeiland, J., dissenting), rev'd on rehearing, 169 (2d Cir. 1981). The mere assertion that such evidence is irretrievably located in Canada is, therefore, not adequate CT Page 11439 to tip the scales in the defendants' favor on a motion to dismiss for forum non conveniens. See, Carlenstolpe v. Merck Co., supra, 907. Picketts, supra, at 509-10.
The defendants have not met this requirement, because they have offered no specificity. They merely state that, "numerous witnesses who have knowledge of facts relating to the events alleged in the complaint and who could testify are located in Greece" or "the majority of crucial witnesses are domiciliaries of Greece and are thus beyond the subpoena power of this court" or "there are numerous witnesses who reside in Greece, including the parties of this action and the relatives of the decedent Mathilde Gregos, who have knowledge and are available to testify, in Greece. . . ." The defendants have not given the names and locations of potential witnesses or the substance of their testimony as required by the rule in Picketts.
In any event, the Picketts Court was unpersuaded by the claim concerning inconvenience to witnesses and lack of compulsory process as a basis for dismissal:
 The trial court therefore lacked the proper evidentiary basis for its finding that "[c]ertainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory court, jury or most litigants"; Gulf Oil Corporation v. Gilbert, supra, 511. The court furthermore lost sight modern technological innovations since the United States Supreme Court issued its decision in Gilbert in 1947. Just as "`[j]et travel and satellite communications have significantly altered the meaning of "non conveniens"'"; Manu International, S.A. v. Avon Products, Inc., supra, 65, quoting Calavo Growers of California v. Belgium, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J., concurring), cert. denied, 449 U.S[.] 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); see Dow Chemical Co. v. Castro Alfaro, supra, 708 (Hecht, J. dissenting), Doggett, J., concurring); so too has the advent of the videotaped deposition greatly transformed the meaning of "compulsory process" in a forum non conveniens calculus. "[V]ideotaped depositions frequently make corporeal transportation of foreign witnesses unnecessary." Rudetsky v. O'Dowd, supra, 347-48. We conclude, therefore, that the trial court abused its discretion when it found that the private interest factors weighed in favor of the defendants CT Page 11440 sufficiently to overcome the presumption afforded the plaintiffs' chosen forum. Picketts, supra, at 511-12.
The plaintiff has also noted and the affidavits bear out that the sources of proof are located within convenient proximity to Connecticut. The defendant, Kondos, has admitted in an affidavit that the corporate records relating to Gregofam are at the office's of Mr. Gregos' counsel in New York City. The reason that the stock certificates are in Greece is because the defendants had possession of them and intentionally took them to Greece. The plaintiff's claim of title to the shares of stock, which is the subject matter of this action arose out of an assignment: executed by George Gregos-Mourginakis (the son of Mathilde Gregos), who is an American Citizen and a long time resident of Greenwich, Connecticut.
The affidavits supplied by the plaintiff indicate without contradiction that the parties and the most likely witnesses are all fluent in English and the documents of importance in this case have already been translated into English.
As to the public interest factors, it is undisputed that the action in Connecticut was filed before the defendants began their actions in Greece. The defendants have conceded that this court has personal jurisdiction over them and that they are property owners in Connecticut. George Gregos-Mourginakis, who appears to be an important witness, is a resident of Greenwich, Connecticut. Arietta Eftychios Mourginakis, the daughter of Mathilde Gregos, is, according no affidavit filed, a woman of some wealth who would have no difficulty in appearing in Connecticut.
While it is probable that Greek law may have to be interpreted to ascertain the validity and applicability of the alleged holographic will, the affidavit of Zafris Hatzidimitriou indicates that the applicable Greek law is not an inscrutable morass. The plaintiff has noted that Greek law may not be the only foreign law that may have application. Gregofam Empresas Commerciales, S.A. is a Panama corporation and the stock purchase agreement, cited by the defendants, is by its terms governed by the law of Panama. Since the shares were removed from bank in Canada after the death of Mathilde Gregos, the authority of the attorneys in fact to do so may involve construction of Canadian law. CT Page 11441
As to the issue of conflicts of law, the Picketts Court has stated:
 With respect to the public interest factors identified by the trial court, we note that it is well established that considerations arising out of conflicts of law are not dispositive for the purpose of dismissals for forum non conveniens. Lehman v. Humphrey Cayman, Ltd., supra, 345; Manu International, S.A. v. Avon Products, Inc., supra, 67-68. "[T]he mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before [it]." Hoffman v. Goberman, 420 F.2d 423, 427 (3d Cir. 1970). Connecticut courts are quite capable of applying foreign law when required to do so and it would be improper to invoke the doctrine of forum non conveniens solely to avoid a choice of law analysis. See Rudetsky v. O'Dowd, supra, 348. Picketts, supra, at 512.
Under all these considerations, the court must find that the defendants have not moved the balance so strongly in their favor, so as to disturb this plaintiff's choice of forum. Therefore, the motion to dismiss on the basis of forum non conveniens denied and the plaintiff's objection to the motion is sustained.
NIGRO, J.